## Omega Street. Travers's Appeal.

[Marked to be reported.]

| 152 | 129 |
| 152 | 135 |
| 152 | 137 |
| 152 | 129 |
| 155 | 627 |
| 152 | 129 |
| 158 | 467 |
| 152 | 129 |
| 159 | 38 |
| 159 | 42 |
| 152 | 129 |
| 179 | 633 |

*Street improvements—Unconstitutional act—Remedial act—Contract—Act of May 16, 1891.*

Where a street improvement is made under an unconstitutional act, and subsequently a remedial act is passed providing that viewers should be appointed " to ascertain and determine the total damages and expenses of such improvement," the assessment should be made on the basis of a quantum meruit, but the contract with the city under which the work was done is some evidence of the cost of the improvement and may be considered by the viewers.

But in such a case if the viewers refuse to hear evidence as to the value of the work, and declare their purpose to " only take the contract price as furnished by the city engineer," and express no belief that the contract price was a fair price, their report will be set aside.

*Practice under act of May 16, 1891.*

Under the act of May 16, 1891, questions of fact must be raised before the viewers, and if a lot owner fails to appear before the viewers to raise questions of fact on which he wishes to be heard, he will be held to have waived them; but questions of form, or of law, arising upon the face of the report may be brought to the attention of the court by exceptions by any one interested and without regard to his appearance or nonappearance before the viewers.

Argued Nov. 1, 1892. Appeal, No. 169, Oct. T., 1892, by M. A. Travers et al., from decree of C. P. No. 3, Allegheny Co., Nov. T., 1891, No. 330, dismissing exceptions to report of viewers. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for appointment of viewers to assess damages for paving and grading Omega street in the city of Pittsburgh. Viewers were appointed who assessed damages done to appellants. The following exceptions, inter alia, were filed to the report in court:

" 1. The assessments were illegal and void."

" 5. The viewers wholly disregarded their duties in not inquiring, as is the fact, into the actual value, costs and expenses of the said improvements."

The court overruled the exceptions, in an opinion which was in part as follows, by McCLUNG, J.:

" [Parties interested must look after the matter before the.
VOL. CLII—9

report leaves the hands of the viewers. They must, if dissatisfied with their assessments, object then and give or offer the viewers such evidence as will enable them to correct error if it exists. If the viewers decide against them, they come into court with the burthen upon them of showing error.] " [5]

The exceptants filed a petition for rehearing, which was refused. Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were, (1, 2) dismissal of exceptions and confirmation of report, but without quoting the exceptions; (3) refusal to permit exceptants any opportunity to take testimony to be heard by the court upon their exceptions; (4) in decreeing the exceptants liable without allowing them any trial or hearing by due course of law; and (5) the portion of opinion above, quoting it.

*M. A. Woodward,* for appellants.—The refusal of the court to hear evidence on the exceptions was a practical denial of justice to the exceptants, and results in their property being taken without due process of law: Craig v. Kline, 65 Pa. 399; Menges v. Dentler, 33 Pa. 497; Wyoming Street, 137 Pa. 494.

The board of viewers has no judicial powers whatsoever. The legislature has no power to appoint a board of viewers without judicial power, and thus exclude citizens from a judicial hearing, when their property is damaged.

The act of May 16, 1891, never contemplated that any party in interest was to be excluded from a hearing in court, by reason of his failure to proceed before the board of viewers, or, if he did avail himself of every hearing before the board of viewers, that he should only come into court when he could make a full report of his proceedings before the said board of viewers, and do so under the obligation to not only show that the report of the board of viewers was unjust and injured him, but that also the board of viewers had disregarded the evidence before them.

*W. C. Moreland,* for appellee.—The exceptions were made for the first time in court, and this involved an injustice alike to the court and to the board of viewers. The appellants did not appear before the viewers, and offered no evidence to inform or enlighten the board, and they filed no exceptions to

the report when it was completed.   Under such circumstances they can have no standing in court to object to the report. Had they offered and furnished proper proof, non constat but that the viewers would have corrected and modified their report.

The court properly exercised the discretion given to it by the act in confirming the report.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1893:

This is a proceeding begun upon the petition of the city of Pittsburgh, for the assessment of benefits upon lot holders resulting from the improvement of Omega street. · The improvements had been made under an act of assembly that was unconstitutional.   The contract entered into by the city with the parties who did the work was in several respects ultra vires.   The contractors had to look to the city for what their work was reasonably worth, and the city was left without any means for enforcing contribution from those who had been benefited by the improvement.   To remedy the inconvenience thus encountered the remedial legislation of May 16, 1891, was provided.   The report before us was made by viewers appointed under that act, and was confirmed by the court below. This appeal is from the decree of confirmation.

The duties of the viewers are very plainly laid down in the act authorizing their appointment.   They must give notice of the time and place of their meeting for the discharge of the duties laid upon them.   At the time fixed they are to go upon the premises and "visit and personally inspect the improvements and the property supposed to be damaged or benefited thereby."   They are required to "hear all parties interested, on all questions before them;" and, after such hearing, "to ascertain and determine the total damages and costs and expenses of such improvement."   They are then to ascertain who has been benefited and to what extent by the improvement made, and assess, not the aggregate sum at which they have arrived, but the actual benefits accruing to each lot owner upon his lot.   Whatever portion of the damages, costs and expenses may remain unprovided for by the assessment of benefits must fall upon the city.   Having heard the parties fully they are to prepare their report, stating the following among other particulars :

1. What the improvement is.

2. The place and places where it has been made.

3. The damages, costs and expenses of the improvement as ascertained and determined by them upon the hearing.

4. The properties in the neighborhood particularly benefited by said improvement and the names of the owners.

5. The properties damaged and the amount allowed in each case.

6. The amount of benefits assessed against each property benefited.

7. What amount of the total amount of damages, costs and expenses are left unprovided for by such assessment.

When this report is prepared it must be open to inspection and exception on a day fixed, and of which notice has been given as required by the act; and if exceptions are filed the viewers "shall give a hearing on the same, and after such hearing modify their report if equity and justice shall require."

The report next goes into the court by which the viewers were appointed where exceptions may be again filed to be heard and disposed of by the court, after which final decree may be made. The courts of Allegheny county appear to have adopted no rules regulating the practice in these cases, but there ought to be little doubt about the intention of the legislature. The questions which a lot owner desires to raise should be raised before the viewers in the first instance, or at least upon the hearing before them when their report is made up. All exceptions, and requests in writing for rulings, placed before them should be returned with their report to the court. If one does not appear before the viewers to raise the questions of fact on which he wishes to be heard, he may properly be held to have waived them, unless he accounts satisfactorily for his failure to appear before the viewers. Questions of form or of law, arising upon the face of the report, may however be brought to the attention of the court by exceptions by any one interested, and without regard to his appearance or nonappearance before the viewers. Among the questions raised by this appeal are some that it is alleged were raised before the view, and one that could only have been raised by an exception to the report. The court dismissed them all. An application was then made for a rehearing upon a petition signed by counsel

setting forth that an effort was made to secure a hearing before the viewers upon all the questions of fact that had been raised by the exceptions filed in court, but that the effort was unsuccessful, the viewers stating that they would hear no evidence regarding the character of the work or its value " and would only take the contract price as furnished by the city engineer." If this petition stated the truth it was sufficient ground for setting the report aside and appointing a new view that would comply with the requirements of the law under which it was appointed. The petition was however refused and a final decree of confirmation entered.

But independently of the petition for a rehearing the report itself affords conclusive evidence that the viewers adopted a false basis for their report and misconceived their duties. They state that they have assessed the damages, costs and expenses at five thousand seven hundred and seven dollars and ninety-eight cents, and to show how they have arrived at that sum they incorporated into their report the following document:

" Chief Department of Public Works.
Statement of Costs.

| | | |
|---|---|---|
| 2950 cubic yards grading | $0.30 | $ 885.00 |
| 1488 square " paving | 2.00 | 2976.00 |
| 1254 lineal feet curbing | .89 | 1116.06 |
| 104 sq. " crossing | 1.00 | 104.00 |
| 8 " yards block stone | 3.74 | 29.92 |
| Total costs &c. | | $ 5110.98 " |
| To this they add damages assessed by them to lot holders | | 597.00 |
| Making an aggregate of | | $ 5707.98 |

The items that make up their total of damages, costs and expenses do not even purport to have been ascertained by them, but to have been furnished from the books of the city, showing the payments made under the contract which fell with the law under which it was made. Whether this contract furnishes a measure of compensation on which the contractor could insist as between him and the city is a question not raised here, and which it is not necessary to consider, but we have distinctly held that it does not furnish a measure binding on the lot

holder : Bingaman v. The City of Pittsburgh, 29 W. N. 364, 147 Pa. 353. In that case, and upon this precise question, the present Chief Justice expressed the unanimous opinion of the court in these words : " We are of opinion that the act contemplates that the assessment should be made on the basis of a quantum meruit. At the same time the contract under which the work was done is some evidence of the cost of the improvement and may be considered by the viewers when they come to make the assessment." In this case the viewers do not so much as say that they believe, or that they find from the evidence, that the contract price was a fair price. They make no inquiry, but acting upon the mistaken idea that they were bound by the contract price they had the proper officer certify that price to them, embody that certificate in their report, and as is asserted in the petition for a rehearing, declare their purpose to " only take the contract price as furnished by the city engineer."

The first and fifth exceptions should have been sustained and the report set aside or re-committed.

The decree of confirmation is set aside at the cost of the appellee and a procedendo awarded.