# Philadelphia and Erie Railroad Co. *versus* Cake.

1. Where viewers are appointed to assess damages for the construction of a railroad and the works connected therewith, it is a fatal omission for them not to state in their report that they made any just allowance for the advantage which may have resulted, or may seem likely to result, to the landowner, or that they made a fair and just comparison of the advantages and disadvantages.

2. Where the damages are grossly excessive the court below may set aside the report of the viewers.

June 11th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Certiorari to the Court of Common Pleas of *Northumberland county :* Of May Term 1879, No. 92.

The proceedings in the court below commenced by a petition for the appointment of viewers to assess damages to the property of Henry L. Cake, by the Philadelphia & Erie Railroad Company. The case was before this court for review on a previous writ of error. (See Cake *v.* Philadelphia & Erie Railroad Company, 6 Norris 307.)

The material facts in the case were as follows :—

Henry L. Cake being the owner of thirteen contiguous lots, constituting together a square, bounded on the west by Railroad Avenue, and on the east by a street twenty-five feet wide, in the borough of Sunbury, in 1865 and 1866 built five blocks of two houses each on this square, making ten single houses, all fronting on Railroad Avenue. The Philadelphia & Erie Railroad Company, which had been incorporated in the name of the Sunbury & Erie Railroad Company, by an Act of Assembly approved April 3d 1837 (Pamph.L. 470), had constructed their railroad from Sunbury to Erie, and been in daily use of the road for many years before these houses were built, owned a tract of about forty-two acres of land situate on the east of the above mentioned twenty-five feet street, through which the tracks of their railroad were laid, and upon which their workshops were built. In 1870 the company, requiring an additional siding, constructed it upon and along this twenty-five foot street, by making an embankment upon it from four to seven feet high, where the east side of the square owned by the defendant in error fronts upon the street, and thereby completely obstructed the street and prevented all passage along it, or to or from the said lots. The company have not reconstructed the said street in any other place.

Cake presented his petition to the court below for the appointment of viewers, under the tenth and eleventh sections of the General Railroad Law of February 19th 1849, to assess the damage he had sustained by reason of the embankment in the street on the east front of his said lots. The order of view was issued on the

10th of August 1871, directing the viewers to meet on the premises on the 5th day of September 1871, but on the 1st day of September 1871, the railroad company presented their petition to the court, stating that the petition and order of viewers were illegal and should be set aside. 1. Because no notice had been served on the company of the appointment of viewers or of the time of meeting. 2. That the proceedings were instituted under the General Railroad Law of 1849, which was inapplicable to the company, and that the company was not subject to the provisions of that law, but had a charter of their own, and that the Act of April 14th 1864, providing for the extension of the 10th and 11th sections of the Act of 1849, had not been accepted by the company, but, as they believed, had been repealed by the Act of July 22d 1864 (Pamph. L. 1865, 944). 3. That no authority was given by the charter of the company for the appointment of viewers to assess damages to land not occupied by the company—that the damages asked for are purely consequential, being in consequence of constructing railroad tracks in said public street, and praying for a rule to show cause why the order appointing the viewers should not be set aside and stricken off, and that all proceedings under the same be stayed in the meantime. The rule to show cause was granted, and proceedings were stayed until after argument, when the court discharged the rule, and ordered the viewers to meet on the 19th of October 1871. On that day the viewers met, and filed their report with the prothonotary, finding for the petitioner $5600, with interest from the 29th day of August 1870.

On the 17th of November 1871, the company filed exceptions to, and entered an appeal from, the report of the viewers. The seventh exception was : " For that the viewers do not state that in estimating and determining the damages, &c., they had any regard to or made any just allowance for the advantages which may have resulted, or which may seem likely to result, to the said Henry L. Cake in consequence of the making or opening of said railroad and of the construction of works connected therewith, nor that they made any fair and just comparison of the advantages and disadvantages." These exceptions were argued, and on the 27th of October 1873, the court overruled them, and directed proceedings on the appeal. The entry was, " October 27th 1873, opinion of the court filed. Exceptions to report of viewers disallowed, and it is ordered that the appeal be proceeded with as directed by the Act of Assembly in such case made and provided."

On the 5th of June 1876, a rule to show cause why the appeal should not be stricken off was entered, which, on argument, the court discharged on the 25th of September 1876, and the cause was called for trial on the 1st of October 1877, when the court having charged the jury to render a verdict for the defendant, they found accordingly on the 3d of October 1877, and judgment hav-

[Philadelphia and Erie Railroad Co. v. Cake.]

ing been entered on the verdict, the cause was by writ of error removed to the Supreme Court, and at May Term 1878, the judgment was reversed and the appeal from the report of viewers was stricken off, and the record ordered to be remitted for further proceedings. (See 6 Norris 307.)

·On the 5th of August 1878, on motion of the petitioner, the court below granted a rule to show cause why judgment should not be entered in favor of the plaintiff and against the defendant, as of the 27th of October 1873, *nunc pro tunc*, for $5600, with interest from the 29th day of August 1870, &c. This rule was argued, and December 27th 1878, the court entered judgment as follows, viz. : "The report of viewers is confirmed, except so much thereof as states with interest from the 29th of August 1870, and judgment is entered thereon in favor of plaintiff, and against defendant, for the amount thereof with interest from the date filing the same, October 19th 1871."

In an opinion filed, the court, Rockefeller, P. J., inter alia, said :—

"That hardship and injustice will be the result of the confirmation of this report, I conscientiously believe. That it ought not to be set aside on merely technical grounds, such as informality in the report, or even substantial errors therein, not excepted to at the time, I have no doubt ; but whether it is the duty of the court, or whether it is now in its power to set it aside on the ground of excessive damages, is another matter. I have already stated that I find the fact that the damages are excessive, but after much thought I have come to the conclusion, that under the circumstances, it is not the duty of the court, nor is it now in its power to set aside the report of viewers for this reason. I might, for the sake of seeing justice done at all hazards, take a different view of this matter if I did not believe the defendant had a full and complete remedy in the Supreme Court if I am wrong. If that court believes injustice has been done, and that this court has refused to interfere on improper principles and mistaken views of the law or of its power, it will do what this court ought to have done. This is asserted on the authority of the case of The Pennsylvania Railroad v. Heister, 8 Barr 448, 453."

Judgment was entered for the plaintiff for $5600, with interest from the date of the filing of the report, October 19th 1871. The company then took this writ, and alleged that the court erred, inter alia, in overruling the seventh exception to the report of the viewers, and in refusing to confirm the report because the damages were excessive.

*H. T. Beardsley, W. C. Packer* and *J. B. Packer,* for plaintiff in error.—The Act of 1849 requires the viewers to make a fair and just comparison of the advantages and disadvantages, and to

have a, due regard to and make a just allowance for the advantages which may have resulted, or which may seem likely to result to the owner in consequence of the making or opening of the railroad and of the construction of works connected therewith : Ohio & Pennsylvania Railroad Co. *v.* Wallace, 2 Harris 248 ; Reitenbach *v.* Railroad Co., 9 Id. 105 ; O'Hara *v.* Pennsylvania Railroad Co., 1 Casey 445 ; Zach *v.* Pennsylvania Railroad Co., Id. 394. A report of viewers, appointed under the fourth section of the Act of 27th March 1848, supplementary to the charter of the Pennsylvania Railroad Company, which omits to state the quality and value of the land taken, is fatally defective, and will be set aside : Pennsylvania Railroad Co. *v.* Porter, 5 Casey 169 ; Puffenberger *v.* Susquehanna Railroad Co., 1 Pearson 46 ; New Castle Railroad Co. *v.* McChesney, 4 Norris 522. From the court's own opinion of the excessive damages it should have set aside the report : Pennsylvania Railroad Co. *v.* Heister, 8 Barr 445. The original act of incorporation of the company of April 3d 1837, invested them with all the usual powers of a railroad corporation, and granted to them "all the privileges, franchises and immunities incident to a corporation, and such as may be necessary or incident to the making and maintaining the said railroad." The eleventh section provides the company "shall have the power to survey, lay down, ascertain, mark and fix such route or routes as they shall deem expedient for a railroad, with as many sets of tracks as, they may deem necessary from Sunbury by the way of Northumberland and Williamsport by the most eligible route to the harbor of Erie."

Clearly the use it now makes of the street is a part of its franchises. It is a liberty granted by the sovereign to its subject, in which the latter cannot now be disturbed except ·by the sovereign power. The location of the route, the act on which its franchise rests, and without which the franchise falls, was done under a general authority, and in the exercise of a discretion conferred. To revise and attempt to correct the location, is to interrupt and destroy the franchise itself, and clearly this does not belong to individual right. The act of location was not void, and if voidable, because other ground ought to have been taken, none but the Commonwealth can now call the company to account for it : Cleveland & Pittsburgh Railroad Co. *v.* Speer, 6 P. F. Smith 325 ; Clarke *v.* Bridge Co., 5 Wright 147 ; Wilmington & Baltimore Railroad Co. *v.* Williams, 4 P. F. Smith 103 ; Note to 1 American Railway Cases 166 ; Black et al. *v.* Phila. & Reading Railroad Co., 8 P. F. Smith 249 ; N. Y. & E. Railroad Co. *v.* Young, 9 Casey 175.

If then the defendant possessed the right to construct this additional track or siding in the fall of 1870, independently of the Act of the 14th of April 1864, such construction should not be regarded as evidential of an acceptance of the act as a part of its charter, and there would be no contradiction in this case of the

testimony of the officers of the company to the effect that the said act has never been accepted and that the company has never proceeded under the same for the appropriation of land.   If they never did accept it, nor adopt nor act under it, can the company be held liable under it without their consent?   The company's original act of incorporation (1837) did not contain any reservation to the legislature of the right to alter or amend it.   The Act of April 14th 1864 did not relate merely to remedies, or the mode of enforcing existing obligations, duties and liabilities, but is sought to impose additional burdens, by making the company liable for a large class of consequential damages for which they were not responsible before, and it was, therefore, defendants submit, unconstitutional and void.   The right of the supreme legislative power to authorize the building of railroads on a street or other public highway is not now to be doubted : Commonwealth *v.* E. & N. E. Railroad Co., 3 Casey 354; Danville, Hazleton & Wilkesbarre Railroad Co. *v.* Philadelphia & Trenton Railroad Co., 6 Whart. 43; Mercer et al. *v.* Pittsburgh, Fort Wayne & Chicago Railroad Co. et al., 12 Casey 99; Faust et al. *v.* Passenger Railway Co., 3 Phila. R. 166; Yost *v.* Philadelphia & Reading Railroad Co., 29 Leg. Int. 85.   The legislature only intended to provide against direct damages not consequential; under our charter there can be no consequential damages.

*J. Adam Cake* and *Joshua W. Comly*,, for defendant in error.— The Act of February 19th 1849 was made applicable to the defendant company by the Act of April 14th 1864.   No prior acts authorized the company to occupy a street, and if they availed themselves of the Act of 1864 they were liable for damages caused by the embankment.   (See 6 Norris 307.)   The construction in this case is a mere siding—a part it is true of the railroad to which it is annexed, but still simply an addition thereto, made for the convenience of the company and not within the reason of the law which requires that the advantages and disadvantages of the railroad shall be taken into consideration when land is taken for the construction of the railroad in the first instance : New Castle & Franklin Railroad Co. *v.* McChesney, 4 Norris 522.   The depositions as to the value of the property are not a part of the record, and this court will not examine into exceptions which are founded thereon, and as the opinion of the court is no part of the record, the statements of the court relative to the excessive damages will not on this certiorari be regarded by this court.

Mr. Justice PAXSON delivered the opinion of the court, June 19th 1880.
The sixth assignment of error must be sustained.   It sets forth that the court below erred in disallowing the seventh exception filed

[Philadelphia and Erie Railroad Co. *v.* Cake.]

by the defendant. Said exception is as follows.: "That the viewers do not state that in estimating and determining the damages, they had any regard to or made any just allowance for the advantages which may have resulted, or which may seem likely to result, to the said Henry L. Cake in consequence of the making or opening of said railroad, and of the construction of works connected therewith, nor that they made any fair or just comparison of the advantages and disadvantages." That this is a radical defect and an adequate ground for setting aside the report, has been repeatedly decided. It is sufficient for present purposes to refer to Ohio & Pennsylvania Railroad Co. *v.* Wallace, 2 Harris 245; Reitenbaugh *v.* The Chester Valley Railroad Co., 9 Id. 100; Zack *v.* The Pennsylvania Railroad Co., 1 Casey 394.; O'Hara & Darlington *v.* Pennsylvania Railroad Co., Id. 445; The Railroad Co. *v.* Porter, 5 Casey 165. It is no answer to say that it would be useless to set forth such matters in the report. The law requires it and for sufficient reasons. As was said in Zack *v.* The Railroad Co., *supra*, "The report is to be reviewed by the court; and this can be of no value if no facts be set out in it, unless the court choose to hear the evidence over again. If the facts be not set out and are not required to be, then a review in this court is worth nothing. Besides it is important in reviewing a case tried out of the general course of the law to see what matters have been inquired of, that it may be known that the cause has been fully and rightly considered."

This disposes of the case and renders a discussion of the remaining assignments unnecessary. It is proper to say, however, that it was the plain duty of the learned judge of the court below, upon his own statement of the case, to have set aside this report. He says in his opinion : "The evidence shows and I find as a fact that the damages found by the viewers are grossly excessive." Notwithstanding this finding, he entered judgment upon the report upon a mistaken idea that he had no power to set it aside, and sent the case up to this court with what amounts to an invitation to us to do what he omitted to do. All this, however, appears only in the opinion of the court which forms no part of the record. How far we would be justified in looking at it when the court below has declined to exercise its discretion from an erroneous view of its power, and has sent up its opinion for the very purpose of showing us its reasons for declining to act, and to invite our review of its ruling, it is not essential now to decide. We reverse the case upon the grounds previously referred to.

The judgment is reversed, and the report of the viewers set aside.