## McCandless Township Appeal.

Argued October 2, 1962.  Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

reargu-
ment refused December 19, 1962.

*James W. Dunn, Jr.,* with him *Scott, Neely & Dunn,*
for appellant.

*John O. Wicks, Jr.,* for appellees.

Opinion by Mr. Justice Benjamin R. Jones, November 13, 1962:

The Board of Commissioners of McCandless Township (Township), Allegheny County, by ordinance, authorized the construction of water lines in Water District No. 2A in said Township. By virtue thereof, 5469 feet of water lines were installed by the West View Water Authority (Authority) under a contract with McCandless Township.[1] The Authority's total cost for the installation of these lines was $47,704.43 of which $37,932.99 was charged to the Township in accordance with the Township-Authority contract. The addition of engineering, legal and other costs to the contract price increased the ultimate cost to the Township for the total project to $41,841.48.

On December 13, 1960, the Township presented a petition to the Court of Common Pleas of Allegheny County requesting that court to appoint three viewers from the Allegheny County Board of Viewers to ascertain the costs, damages, if any, and the expenses of the aforesaid water lines and to assess the benefits of this improvement.[2] It is to be noted that in the case at bar,

---

[1] In a sense, McCandless Township is a "captive" of the Authority since the latter has the only source of piped water in the area. The Authority advertised for bids for construction in a competitive manner and the Township was free to examine all bids and all items of cost.

[2] The Township's authority to charge the cost of construction upon properties benefited by water lines is to be found in the Acts of June 24, 1931, P. L. 1206, §1502, cl. XV, of July 18, 1935, P. L. 1312, §1, of May 27, 1949, P. L. 1955, §31, and of August 19, 1953, P. L. 1090, §1, 53 P.S. §56515. These statutes provide that "charges shall be assessed and collected in the manner provided in this act for the assessment and collection of charges for the construction of sewers." The manner of assessment of charges for sewer system construction is provided in the Acts of June 24, 1931, P. L. 1206, §§2408, 2409 and of May 27, 1949, P. L. 1955, §49, 53 P.S. §§57408, 57409. Therein it is provided that, if the Township Commissioners elect to assess the properties in proportion to benefits they shall

since the water lines were constructed *entirely* within the public streets, there were no damages involved. The board of viewers (Board), appointed by the court, viewed and examined the area wherein the water lines were constructed and the properties abutting thereon. The Board then prepared a schedule (report) of assessments placing the entire cost of the improvement upon the abutting property owners. This schedule set forth that there were no damages apart from special benefits, that the total cost of the improvement was $41,841.27 and imposed the *entire* cost upon the abutting property owners *charging nothing against the Township*. Notice of said schedule and the time and place of its exhibition was served upon all the affected property owners. Ten of the forty assessed property owners filed exceptions to the schedule or report. The Board held a hearing on these exceptions: the record before us is silent as to what transpired at this hearing and we have before us only the briefs of counsel for the respective parties which purport to set forth what took place at this hearing.[3] After this hearing, the Board

petition the Court of Common Pleas for the appointment of viewers to assess benefits in which event the court shall appoint three disinterested persons from the County Board of Viewers and the viewers so appointed shall proceed to assess benefits.

[3] According to the Township's brief, the Board heard comments from the property owners involving questions of measurements of lot width, frontage on a street other than that in which the water line was laid, allegations that additional properties should have been included in the Water District, that some property owners did not need water because of wells, that a front foot rule was used rather than a benefit rule and that some lots were unduly burdened in that water lines were extended along the entire frontage of property rather than simply to a point where use could be made by the abutting property owners and there was a general response on the part of the property owners that the cost of the improvement was "high". According to the property owners' brief, at the hearing the thrust of their argument was to the excessive cost of the improvement and was comprised of three matters: (a) that a

filed a new report which simply set forth that there were no damages apart from special benefits, that the total costs of the improvements was $41,841.27 and levied assessments totalling $30,595.50 against the specified property owners in certain specified amounts *charging the Township with the difference between the total amount of costs and expenses of said improvement and the total amount of such benefits,* to wit, $11,245.77. This report *as it appears in the instant record* contains no findings of fact on the part of the Board nor any explanation concerning the imposition of costs amounting to $11,245.77 upon the Township.

Exceptions were filed by the Township to the report of the Board alleging errors in procedure in that the Board's report was not supported by findings of fact but only based upon a desire to reduce the charges against the property owners. These exceptions were argued before the Court of Common Pleas of Allegheny County and on January 9, 1962 an order was made by that court dismissing the Township's exceptions and confirming absolutely the report of the Board. From that order the Township took this appeal.

The Township raises two questions on this appeal: (1) in the absence of findings by the Board of fraud, gross extravagance or waste to justify a departure from the Township policy in apportioning the total cost of such projects among the abutting property owners, was the assessment by the Board against the abutting prop-

large amount of the water lines did not benefit any of the properties or the Water District generally, (b) that a large portion of the line abutted upon properties which were benefited by the line but since these properties were not included in the Water District they were not assessed and the cost thereof was placed upon those properties in the Water District and (c) that the faulty layout of the water lines and erroneously located water district boundaries had increased the total cost to the Water District but the resulting increase in costs did not benefit properties within the district.

erty owners of only a *portion* of the costs of installation of the water lines proper?; (2) may the Board, having published a schedule of assessments assessing the *entire* cost of the water lines upon abutting property owners, issue a revised schedule or report effecting a general reduction of all the assessments, based upon objections filed by only 25% of the property owners, without making specific findings of fact justifying such revision?

Basically, the Township's position and the attack it makes upon the confirmation by the court below of the Board's report is that the court below confirmed in error the Board's placement of any part of the costs of the water lines' construction upon the Township.

In passing upon the propriety of the action of the court below in confirming this report we encounter an essential difficulty in that *the report contains no findings of fact nor any reason or explanation* for the reduction of the assessments made in the original report or for the placement of a portion of the costs of this project on the Township. The report simply reveals the end result without any hint whatsoever as to how that result was attained.

Over a hundred years ago this Court in *Zack v. Pennsylvania RR. Co.,* 25 Pa. 394, 396, 397, in an eminent domain proceeding, stated: ". . . it is argued that the law does not require the viewers to state anything in their report but the damages; but this is treating their oath altogether too lightly, or overlooking the fact that they are sworn to report all the matters which become a subject of their inquiry, including expressly, and at the least, the quantity, quality, and value of the land taken. . . . *The report is to be reviewed by the Court; and this can be of no value if no facts be set out in it, unless the Court choose to hear the evidence over again. If the facts be not set out, and are not required to be, then a review in this Court is worth noth*

*ing. . . .* In such a summary mode of dealing with a man's property, he has a right to expect that it shall appear in the report that his cause has been fully considered, and certainly, in the long run, such mode of reporting is fairest for both parties. It does not at all interfere with the promptness of the remedy, and it saves both parties in some degree, from the risk of a mere perfunctory report, and perhaps from much future litigation; for then the rights of both are fully defined, and the very things for which damages have been paid are ascertained." (Emphasis supplied) See also: *Philadelphia & Erie RR. Co. v. Cake,* 95 Pa. 139, 144; *Phoenixville V. F. & S. Electric Railway Company's Appeal,* 70 Pa. Superior Ct. 391, 393, 394.

In view of the present state of this record and the complete absence in the Board's report of any findings of fact or of any reason or explanation in justification of the change in its original schedule and for the placement upon the Township of a portion of the costs of the water lines' construction, we have no other recourse than to remand the matter to the court below with instructions that the Board file a new report wherein are included appropriate findings of fact and reasons in justification of its determination. Particularly, is this necessary in the case at bar where it readily appears from an examination of the figures in the report that the Board made a general "across the board" reduction of the assessments against the property owners.

Order vacated and the matter remanded to the court below for proceeding in accordance with this opinion. Costs to abide the event.

Mr. Chief Justice BELL dissents.