McCandless Township Appeal.

Argued October 1, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James W. Dunn, Jr.,* with him *Scott, Neely & Dunn,* for appellant.

*John O. Wicks, Jr.,* with him *Thomas P. Geer,* for appellees.

OPINION BY MR. JUSTICE JONES, April 21, 1964:

This appeal is from an order of the Court of Common Pleas of Allegheny County which affirmed a *supplemental* report of a board of viewers (Board) wherein the Board levied assessment benefits, arising from the installation of certain water lines in McCandless Township, Allegheny County, against properties which were improved by such project.

McCandless Township (Township) duly authorized the installation of certain water lines in the Township. Pursuant thereto, the water lines were installed. Installation of the water lines was by the West View Water Authority, under a contract with the Township, and the ultimate cost of such installation to the Township was $41,841.27.[1]

---

[1] A much more detailed account of the factual background of this appeal is set forth in *McCandless Township Appeal,* 409 Pa. 283, 284-286, 186 A. 2d 393.

At the Township's instance, the court of common pleas appointed a board "to ascertain the costs, damages,[2] if any, and expenses of [the project] and to assess the benefits of said improvement". The Board prepared a report—herein called the schedule—in which the Board found there were no damages involved and that the total cost of the project was $41,841.27 and *it imposed the entire cost of the project upon the property owners charging nothing against the Township*. Certain property owners excepted to this schedule and, after a hearing,[3] the Board levied assessments for benefits against the property owners totalling $30,595.50 and charged to the Township the difference between the entire cost and the total amount of benefits assessed, to wit, $11,245.77. An examination of that report indicates that the Board made a general "across the board" reduction of the assessments. As we noted in *McCandless Appeal,* supra, this "report contain[ed] no findings of fact nor any reason or explanation for the reduction of the assessments made in the original report or for the placement of a portion of the costs of this project on the Township." (p. 287).

On appeal to this Court from an order of the court below which had confirmed this report, in view of the completely unsatisfactory nature of the Board's report, we remanded the matter to the court below with "instructions that [the Board] file a new report wherein are included appropriate findings of fact and reasons . . . in justification of its determination". Pursuant to our mandate, the court below properly returned the matter to the Board with instructions that the Board comply with our order.

---

[2] Since the water lines were installed entirely within the confines of public highways no right-of-way damages are involved.

[3] We have no record of what transpired at that hearing, except as contained in statements in the briefs. See: *McCandless Township Appeal,* supra, p. 285 and footnote.

The Board then filed a *supplemental* report to which the Township filed exceptions, which exceptions were dismissed by the court below. From that order, the instant appeal was taken.

Two questions are presented: (1) whether this *supplemental* report of the Board complied with the mandate of this Court? (2) in view of the Board's failure to find that the design and plan of the water lines' project were improper or faulty or that the project costs were excessive or that the Township acted in bad faith or in a fraudulent manner, did the Board have the power and authority to assess against the property owners only a portion of the project costs and charge the balance of such costs against the Township?

An analysis of the Board's *supplemental* report readily reveals the failure of the Board to carry out our order. This supplemental report indicates: (1) the Board inferentially questions the validity of our order because (a) there was no record before the Board upon which findings of fact could be based and (b) it was never the Board's practice to make findings of fact unless requested; (2) the procedure adopted by the Board in making its *original* report; (3) a statement by the Board that its *original* report was erroneous "in that certain properties were demonstrated to have different frontages and lesser benefits than had first appeared", although the Board now acknowledges that such error had no bearing on the Board's final determination "since the amount charged to the Township [was] in excess of the total value of these frontages"; (4) a statement of the Board's belief that "all of the properties together were not benefited to the extent of the whole cost of the improvement as [the Board] first had thought" and, therefore all, of the assessments were reduced "in the interest of uniformity and justice". The modus operandi by which

the Board determined and allocated the portion of the project costs to be paid by the Township and the portion of such costs to be paid by the property owners is not divulged, *how* the Board ascertained the actual amount of benefit to each property involved is not disclosed nor is the report in any respect informative as to the justification for what is obviously and manifestly an "across the board" reduction of the assessments from those made in the schedule. All the Board states is that "uniformity and justice" required such a reduction. Such ipse dixit neither complies with the order of this Court nor the statutory duties and obligation of the Board.

For some reason or other, this Board has utterly failed to carry out our instructions and those of the court below. Inherent and explicit in such instructions was the requirement that the Board set forth its reasons and the factual basis for the reduction of the assessments and for the placement of a portion of the cost of the project on the Township; such requirement the Board has not met. If a hearing is necessary, as we deem it to be, at which both the Township and the property owners may present factual data to support their respective positions such a hearing must be held and, after such hearing, the Board should then file a report which clearly and expressly sets forth *why* it determines that a portion of the costs of the project should be placed on the Township and *how* it determines the amount of benefits to be assessed against each property involved. The unsupported and unexplained conclusion that "uniformity and justice" require a placement of a portion of the costs on the Township and an "across the board" reduction of the assessments against the property owners is clearly insufficient.

Most recently, the United States Supreme Court, in *U.S. v. Merz*, 376 U.S. 192, 11 L. Ed. 2d 629, 84 S. Ct.

639 (1964), in commenting on the kind of a report to be filed by a commission appointed, under Rule 71A(h), Federal Rules of Civil Procedure, to ascertain "just compensation" in eminent domain proceedings, stated: "Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court 'unless clearly erroneous';[4] and conclusory findings . . . are normally not reviewable by that standard, even when [the Court] reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence. . . . The commissioners need not make detailed findings. . . . We do not say there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked . . . [the commission] will give more careful consideration to the problem if [it is] required *to state not only the end result of their inquiry, but the process by which [it] reached it.*" (Emphasis supplied). Even though the federal procedure involved in *Merz* differs from our procedure, the language in *Merz* is particularly apposite as to the kind of report which a Board of Viewers should make and which the present Board did not make.

. Because of the Board's failure to comply with our instructions, unfortunately, this matter must again be remanded to the court below. The court below is in a more favorable position than this Court to determine whether the present Board *will* follow our instructions and we suggest that the court below first determine whether the present Board *will* follow such instructions. If the court below concludes that this

---

[4] In this respect, cf. *Nether Province Township Sewer Assessment Case*, 148 Pa. Superior Ct. 7, 13, 24 A. 2d 678.

Board, for any reason whatsoever, will not or cannot comply with our instructions, then, in the court's discretion, a new Board should be appointed; if the court below concludes that the present Board will and can comply with our instructions, then the matter should be remanded to the present Board.

To whatever Board this matter shall be remanded by the court below, it is suggested that the court below direct that such Board hold a hearing at which all parties shall have an opportunity to be heard and, on the basis of that which is developed at such hearing and the Board's own view, a report should be promptly submitted setting forth clearly and explicitly the manner in which the Board reaches its determination on the several matters involved.

Apparently the parties and the court below are in doubt whether under the law the Township may be liable for *any* portion of the costs of the project. The Township urges that Section 1502 of The First Class Township Code (Act of June 24, 1931, P. L. 1206, §1502, cl. XV; Act of July 18, 1935, P. L. 1312, §1; Act of May 27, 1949, P. L. 1955, §31; Act of August 19, 1953, P. L. 1090, §1, 53 PS §56515) fully supports its position that it may not be held liable. Section 1502 provides, inter alia: ". . . in all cases where said township shall have established a water system and shall construct main water lines in said township, [the Township] *may charge the cost of construction* of any municipal water lines . . ., *or such portion of the cost of construction as the [Township] may deem proper,* upon the properties benefited or accommodated thereby. . . ." (Emphasis supplied). The Township argues that, under Section 1502, if the Township adopts the "benefit" method of assessing the costs rather than the "foot front" method, it is the Township alone which determines whether all or only a portion of the costs of the water lines shall be placed on the property own-

ers and that it is the sole function of the Board to apportion among the property owners the allocable cost of the project.

It is to be noted that Section 1502 provides that the "charges [for the cost of construction of the water lines] shall be assessed and collected in the manner provided [in the Code] for the assessment and collection of charges for the construction of sewers." Section 2408 of the Code (53 PS §57408) provides that, when assessments are to be made "upon the several properties abutting on the sewer in proportion to benefits" (as in the case at bar is to be made on properties abutting on the water lines), the "amount of the charge on each property shall be ascertained" under Section 2409 of the Code, i.e., by the court appointment of a Board of Viewers who shall proceed in the manner provided in the Code "for the assessment of damages and benefits by viewers. . . ." (53 PS §57409).

Section 1924 of the Code (53 PS §56924), a part of that portion of the Code which sets forth the manner in which the assessment of damages and benefits is to be made, gives to the viewers, after determining the damages apart from the benefits, the authority to *"assess the total cost of the improvement, or so much thereof as may be just and reasonable,* upon the lands or properties peculiarly benefited. . . ."* (Emphasis supplied).

Section 1502 must be read in connection with Sections 2408, 2409 and 1924 of the Code and, so read, indicates that the Board may, upon the basis of its findings, determine whether the *entire* cost of the improvements or *only a portion* thereof should be placed on the property owners. Even though there be no bad faith or fraudulent conduct on the Township's part, even though the cost of the project be reasonable and the plan and design of the project proper, even so the Board, in the assessment of benefits, is restricted to

levying assessments on the basis of the *actual* benefits accruing to the property owners. If the actual benefits to the properties involved are less than the project cost, the balance of such cost may be charged to the municipality.

In *Omega Street. Travers's Appeal,* 152 Pa. 129, 131, 25 A. 528, this Court said: "They are required to 'hear all parties interested, on all questions before them;' and, after such hearing, 'to ascertain and determine the total damages and costs and expenses of such improvement.' They are then to ascertain who has been benefited and to what extent by the improvement made, and assess, not the aggregate sum at which they have arrived, but the actual benefits accruing to each lot owner upon his lot. Whatever portion of the damages, costs and expenses may remain unprovided for by the assessment of benefits must fall upon the city."

Order reversed and the matter remanded to the court below for further proceedings consonant with the views expressed in this opinion.