CATHOLIC CEMETERIES ASSOCIA-
TION OF THE DIOCESE OF PITTS-
BURGH, INC., Appellant,

v.

TOWNSHIP OF PINE, ALLEGHENY
COUNTY, Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.
Decided March 14, 2002.

Bikram Brandy and David R. Cohen, Pittsburgh, for appellant.

Richard B. Tucker, III, Pittsburgh, for appellee.

Before FRIEDMAN, Judge, LEADBETTER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Catholic Cemeteries Association of the Diocese of Pittsburgh, Inc. (Association) appeals from the April 20, 2001 order of the Court of Common Pleas of Allegheny County (trial court), which affirmed the Final Report (Final Report) Issued by the Board of Viewers (Board) for the Warrendale Bakerstown Road and Brierly Road Water District (Water District). We vacate and remand.

On November 6, 1995, the Township of Pine (Township) enacted Ordinance No. 234, which established the Water District and authorized the installation of water lines within the Water District. Ordinance No. 234 provided that once the water lines were installed, the Township would petition the trial court for the appointment of viewers to assess each property benefited by the construction of the water lines. The viewers were to assess the properties based on the benefit to each property from the water lines. (R.R. at 128a–34a.)

The Association owns 37.3 acres of land in the Township; the land is zoned E–1. Bakerstown Road divides the land so that 12.3 acres lie to the north (Northern Tract) and 25 acres lie to the south (Southern Tract). The Northern Tract has 300 feet of frontage along Bakerstown Road, and the Southern Tract has 100 feet of frontage. (Affidavit of Ernest U. Orsati, Development Consultant for the Association, ¶¶ 2, 7.)

The Northern Tract is undeveloped, with steep slopes and heavy underbrush. In fact, there are guardrails along Bakerstown Road to restrict access to the land. The Association has designated the Northern Tract for future cemetery development.[1] The Southern Tract contains a

---

1. However, if the Association were to meet certain engineering criteria with respect to the steep slopes, the Association could develop the Northern Tract for other purposes, including agricultural or residential purposes. (R.R. at 191a–92a.)

caretaker residence, a small chapel used for burial services, a trailer used as a temporary sales office and a service garage used to store lawn equipment. All of these structures support the use of the Southern Tract as a cemetery. (Orsati Affidavit, ¶¶ 9–12.)

On May 20, 1997, the Association granted the Township a right-of-way for the installation of a water line on its property pursuant to Ordinance No. 234. When the installation was completed in 1999, the Association provided water from the water line to the caretaker residence. The caretaker uses the water for ordinary domestic purposes and does not use the water in connection with the cemetery grounds. The Association also provided water from the water line to the trailer for a lavatory, but this use of public water will cease when the trailer is moved. Finally, the Association ran a small lateral water line from the caretaker residence to the service garage for two spigots. The water from these spigots is used to clean tools. There is no water service to the chapel. (Orsati Affidavit, ¶¶ 3–4, 6, 13–16.)

The Association has no plans to use public water to provide an irrigation system for the cemetery. Instead, the Association plans to rely on a large ravine and a natural wetland on the Southern Tract, where the Association has built a retention pond to collect storm water runoff. The water from the retention pond, along with water from an underground well, will be used to irrigate the cemetery. (Orsati Affidavit, ¶¶ 21, 23.)

On April 19, 1999, the trial court issued an order appointing the Board to assess the properties within the Water District.[2] (R.R. at 25a.) In its initial report, filed with the trial court on November 9, 1999, the Board assessed most of the residential properties between $5,000 and $6,000; however, the Board assessed the Association $21,500. (R.R. at 32a.) The Association filed exceptions to the report on December 22, 1999, and a hearing was held on February 17, 2000 before the Board. (R.R. at 34a.)

At the hearing, the Association argued that the Board should assess the cemetery as a single-person residential property. The Association asserted that the Board is not permitted to speculate about water usage resulting from future development of the property; in fact, the Association claimed that, because of the steep slopes and limited frontage of the Northern Tract, it would be extraordinarily difficult to develop that portion of the property except as a cemetery. The Association presented the Affidavit of Ernest U. Orsati to support this position. (R.R. at 161a, 204a.) For its part, the Township presented the testimony of Gary John Koehler, Township Manager, to establish that the Association could develop the Northern Tract in a way that would require public water if the Association met the steep slope engineering requirements set forth in provisions of the local ordinance. (R.R. at 190a–92a.)

■ After the hearing, the Board filed its Final Report, showing that the Association's assessment remained $21,500. The Association filed an appeal with the trial court, which affirmed the Final Report. The Association now appeals to this court.[3]

---

**2.** The trial court issued another order on May 5, 1999, replacing one of the viewers. (R.R. at 28a.)

**3.** Our scope of review is limited to determining whether the trial court abused its discretion, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Hagan v. East Pennsboro Township*, 713 A.2d 1187 (Pa. Cmwlth.1998).

## I. "Benefits" Method

■ The Association argues that the trial court erred in affirming the Final Report because sections 1610 and 1611 of The Second Class County Code (Code),[4] which authorize the "benefits" method of assessment,[5] were repealed prior to appointment of the Board in April 1999.[6] We disagree.

### A. Repeal of Sections 1610 & 1611

■ Ordinance No. 234 was enacted on November 6, 1995 and prescribed the "benefits" method of assessment pursuant to sections 1610 and 1611 of Code. Because the repeal of these sections of the Code did not take effect until May 1996,[7] Ordinance No. 234 was enacted under legitimate statutory authority.

It is of no consequence that the Board was appointed after the repeal took effect. Section 104 of the Code states that the provisions of the Code "do not affect any act done ... under the authority of any repealed laws." 53 P.S. § 65104. This provision of the Code is consistent with the rules of statutory construction. Section 1976(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1976(a), provides:

The repeal of any civil provisions of a statute shall not affect or impair any act done ... under the authority of the statute repealed. Such action may be proceeded with and concluded under the statutes in existence when such action was instituted, notwithstanding the repeal of such statutes, or such action may be proceeded with and concluded under the provisions of the new statute, if any, enacted.

Therefore, the repeal of sections 1610 and 1611 did not prevent the Township from proceeding with and concluding the assessment by means of the "benefits" method as provided in Ordinance No. 234.

### B. Retroactivity of Sections 2612 & 2613

■ Sections 2612 and 2613 of the Code, 53 P.S. § 67612 and § 67613, which replaced sections 1610 and 1611, do *not* provide for assessment using the "benefits" method.[8] The Association argues that sections 2612 and 2613 should be given retroactive effect because the assessment method is a procedural matter that does not affect the Township's substantive

---

4. Formerly sections 1610 and 1611 of the Code, Act of May 1, 1933, P.L. 103, *repealed by* section 1 of the Act of November 9, 1995, P.L. 350 (Act 1995–60), 53 P.S. §§ 66610 and 66611.

5. Section 1610 stated that a township could pay for the cost of water line construction by an assessment (1) in proportion to the frontage of each property on the mains *or* (2) in proportion to the benefits to each property. Section 1611 stated that, when the township selects the "benefits" method, the township must petition the court of common pleas to appoint viewers to assess the benefits.

6. The Township argues that the Association failed to preserve this issue for appeal because it did not raise the issue at the Board's hearing. However, section 515 of the Eminent Domain Code, Act of June 22, 1964,

Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–515, which governs appeals from the decision of a board of viewers, states that the appeal to the court of common pleas shall contain "all objections of law or fact to the viewers' report." Because the Association raised the repeal of sections 1610 and 1611 as an issue before the trial court, the Association properly preserved the issue. (*See* R.R. at 48a.)

7. Under section 3(3) of Act 1995–60, the repeal of sections 1610 and 1611 was to take effect 180 days following November 9, 1995.

8. Section 2612 allows (1) an assessment in proportion to the frontage of each property *or* (2) an *equal* assessment on all properties in proportion to the total cost of construction. 53 P.S. § 67612.

rights.[9]

Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926, states that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly. Here, section 2 of the Act of November 9, 1995, P.L. 350 (Act 1995–60), which repealed sections 1610 and 1611 and· added sections 2612 and 2613 to the Code, specifically lists certain sections of Act 1995–60 that are to be retroactively applied. Sections 2612 and 2613 of the Code are not included in that list. Moreover, although the assessment method used by the Township to recoup the cost of the water lines does not affect the Township's substantive rights, it *does* affect the substantive rights of the property owners. Therefore, sections 2612 and 2613 should *not* be given retroactive effect.

## II. Substantial Evidence

■ The Association also argues that the trial court erred in affirming the Final Report because the record lacks substantial evidence to support the $21,500 assessment on the Association's property. The Association asserts that the $21,500 assessment is excessive in relation to the benefit conferred upon the property.

In the case of *In re Township of McCandless,* 409 Pa. 283, 287, 186 A.2d 393, 395 (1962) (emphasis in original, citation omitted) (*McCandless I* ), our supreme court was asked to review a trial court opinion that confirmed the report of a board of viewers. The court stated:

In passing upon the propriety of the action of the court below in confirming this report we encounter an essential difficulty in that *the report contains no findings of fact nor any reason or explanation* for the ... assessments made in the original report.... The report simply reveals the end result without any hint whatsoever as to how that result was attained.

Over a hundred years ago this Court ... in an eminent domain proceeding, stated: "... it is argued that the law does not require the viewers to state anything in their report but the damages;[10] but ... *[t]he report is to be reviewed by the Court; and this can be of no value if no facts be set out in it, unless the Court chooses to hear the evidence over again. If the facts be not set out, and are not required to be, then a review in this Court is worth nothing.*"

Accordingly, the court remanded the case with instructions to file a new report containing appropriate findings of fact and reasons to justify the determination. *Id.* Upon remand, the board of viewers filed a supplemental report, which was appealed and once again reached our supreme court for review. *In re Township of McCandless,* 414 Pa. 168, 199 A.2d 438 (1964) (*McCandless II* ). Because the supple-

---

**9.** Substantive laws affect rights; procedural laws address methods by which rights are enforced. *Morabito's Auto Sales v. Department of Transportation,* 552 Pa. 291, 715 A.2d 384 (1998). Procedural laws are given retroactive effect, whereas substantive laws are not given retroactive effect. *Id.*

**10.** Section 5(c) of Ordinance No. 234 states that the viewers shall file their report in accordance with section 511 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. § 1–511. (R.R. at

131a.) Section 511(5) of the Eminent Domain Code requires that the viewers file a "schedule of ... benefits assessed. ...." Section 511(9) of the Eminent Domain Code states that the viewers shall file "[t]heir rulings on any written requests for findings of fact and conclusions of law submitted to them." Section 511(10) of the Eminent Domain Code states that the viewers shall file "[s]uch other matters as they may deem relevant."

mental report still did not disclose how the board ascertained the actual amount of benefit to each property, the court was compelled to remand the matter a second time. *Id.*

Here, as in *McCandless I* and *McCandless II*, the Final Report contains no findings of fact, no conclusions of law and no explanation as to how the Board ascertained the actual amount of benefit to each property. Thus, it is not possible for us to perform our appellate role and determine whether the record contains substantial evidence to support the Board's findings.

■ Accordingly, we vacate the trial court's confirmation of the Final Report and remand this case so that the Board can make necessary findings of fact and conclusions of law and can explain how it arrived at the $21,500 assessment.[11]

### ORDER

AND NOW, this 14th day of March, 2002, the order of the Court of Common Pleas of Allegheny County, dated April 20, 2001, is vacated, and this case is remanded so that the Board of Viewers (Board) can make findings of fact and conclusions of law and so that the Board can explain how it arrived at the $21,500 assessment.

Jurisdiction relinquished.

---

**11.** We note that an assessment must always be related to benefits conferred upon the property owner. *Palmer Township Municipal Sewer Authority v. Witty*, 479 Pa. 240, 388 A.2d 306 (1978). The assessment must be based on *realistic* benefits to the property, *not speculative* benefits. *Id.* In other words, if an assessment is based on a projected future benefit to the property, there must be substantial evidence to show that the projected future benefit is realistic and not speculative.

We also note that, in *Coyne v. Town of McCandless*, 764 A.2d 681 (Pa.Cmwlth.2000), *appeal denied*, 566 Pa. 650, 781 A.2d 148 (2001), we held that a particular method of assessment based on the projected future benefit to each property assessed was not arbitrary and, thus, was not unconstitutional. However, in *Coyne*, the record contained a description of the careful process used to analyze the projected future benefit to each property. Such a description is lacking in the record before us here.