Ralph R. Riehl, Jr. and Susan Riehl, his wife, Appellants *v.* Millcreek Township Sewer Authority, Appellee.

Norman W. Seip and Margaret D. Seip, his wife, Appellants *v.* Millcreek Township Sewer Authority, Appellee.

514

Argued October 5, 1981, before Judges MENCER, MACPHAIL and PALLADINO, sitting as a panel of three.

*Ralph R. Riehl, III, Alberstadt & Riehl,* for appellants.

*Joseph F. MacKrell,* with him *Paul F. Curry, Knox, Graham, McLaughlin, Gornall and Sennett, Inc.,* for appellee.

OPINION BY JUDGE MACPHAIL, February 11, 1982:

Mr. & Mrs. Riehl and Mr. & Mrs. Seip (collectively Appellants) are adjoining property owners in Millcreek Township (Township). The Millcreek Township Sewer Authority (Authority) has constructed sewer lines in the Township and has assessed Appellants' lots for the cost thereof on a front foot basis. Appellants refused to pay the assessments whereupon Authority filed municipal claims. A scire facias issued on the claims pursuant to which appropriate pleadings were filed followed by a non-jury trial wherein all municipal claims against Appellants were consolidated. At the conclusion of that trial an order was entered by the trial judge finding the sewer assessments and computations valid.[1] This appeal followed.[2]

Prior to trial, the parties entered into a stipulation of facts. From that stipulation and the evidence adduced at the trial it appears that the factual background of the case is as follows. Appellants Riehl own 2 lots of ground numbered 022 and 018 on the Township Property Map. The 2 lots contain 8 acres in the aggregate. The Riehl lots are bounded on the north by Wolf Road (a public road), and on the south by Watson Road (a private road). Other lots to the east of Riehl are similarly bounded on the north and south. Lot 018 is contiguous to and east of lot 022. A private road, 50 feet in width, runs north and south on the west side of lot 022. That private road separates the Riehl property from the Seip property. The Riehls have constructed a single family dwelling on lot 018 using a septic tank system for sewage disposal.

Appellants Seip also own two tracts of ground. Lot 035 contains 6.93 acres. It is bounded on the north by Wolf Road, on the east by the private road separating

---

[1] By virtue of a supplemental record, we are now advised that judgment has been entered against Appellants.

[2] This case was re-assigned to the writer January 11, 1982.

it from Riehls' lot 022 and on the south by other land, including Seips' second parcel which contains 4.68 acres. The second parcel does not appear to be involved in the instant dispute. Seips have a single family dwelling on lot 035 and use a septic system for sewage disposal.

When Appellants first purchased their respective tracts of real estate they were restricted by deed covenants to one single family dwelling on each lot. In 1963, however, all interested parties entered into an agreement whereby those restrictive covenants were modified to provide that Seip could subdivide lot 035 into three parcels and Riehl could subdivide each of his lots into two parcels. Nothing is said in the agreement about how the tracts are to be subdivided. Appellants have not subdivided their land and profess to have no intention of doing so.

The Authority constructed a new sewer line in Wolf Road, in Watson Road and in the private road separating the Riehl and Seip properties. Pursuant to Authority Resolution No. 542 (Resolution) assessments were made against each property on a front foot basis taking into account, after adjustments, the distance which each property fronted on each of the three streets.

Appellants do not dispute that their properties were benefited by the sewer lines in Wolf Road. Seips are not affected by nor assessed for the sewer line in Watson Road. Riehls do not deny that their property was benefited by the sewer line in Watson Road. Appellants jointly deny that their properties are benefited by the sewer line in the private road separating their properties. Almost all of the evidence received at the non-jury trial was directed to that single issue. The trial court found that both properties were benefited by the sewer line in that private road.

Section 4B(s) of the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306B(s) provides that a municipal authority may charge the cost of constructing a new sewer line against the properties "benefited, improved or accommodated thereby." It makes no difference for assessment purposes whether the sewer line is laid in a public or private road, *Highland Sewer and Water Authority v. Engelbach,* 208 Pa. Superior Ct. 1, 220 A.2d 390 (1966).

The principles of law applicable to the facts of this case are articulated in *Palmer Township Municipal Sewer Authority v. Witty,* 479 Pa. 240, 388 A.2d 306 (1978). Our Supreme Court held in that case that an assessment must always be related to the benefits conferred upon the property owner and while there is a presumption that a property abutting a new sewer line is benefited by it, that presumption is rebuttable. Where the evidence in the case compels a conclusion that an abutting property is not benefited, then the assessment cannot stand. In *Witty* the subject property abutted two streets where a sewer line has been constructed. The trial court found an assessment computed on the frontage of both streets improper because the dwelling situated on the property was connected to the sewer on the one street and a zoning ordinance prohibited the construction of another residence on the same property. Our court reversed, finding the situation similar to that presented in *Upper Gwynedd Township Authority v. Caltabiano,* 206 Pa. Superior Ct. 476, 214 A.2d 288 (1965). Our Supreme Court reversed both *Caltabiano* and our decision in *Palmer Township Municipal Sewer Authority v. Witty,* 26 Pa. Commonwealth Ct. 117, 362 A.2d 1106 (1976), holding that the trial court had decided the case correctly based upon the evidence before it. We infer from that decision of the Supreme Court that the issue of whether property

has been benefited is an issue of fact to be determined by the trier of fact and if the court's finding is supported by competent substantial evidence in the record, it should not be disturbed.

In the instant case the trial court found that the subject properties *were* benefited. Although there was a definite conflict in the evidence, the trial court found that the fact that Appellants have the present right to subdivide their land was sufficient to establish that both properties were benefited by the sewer line wherever streets in which the sewer line was constructed abutted those properties. The court concluded that Appellants simply had not met their burden of overcoming the factual presumption that their properties were benefited. In its opinion, the trial court stressed the importance of the size of the properties in this case as opposed to the situation where a single building lot might be involved. Our review of the evidence indicates that there can be no question that either or both properties could be subdivided in such a manner that residences would front on the private road. In addition, Seip admitted that it will be less expensive for him to connect his present residence to the sewer line in the private drive than it would be to connect on Wolf Road. Finally, a real estate appraiser familiar with real estate values in the area testified that in his opinion both properties were benefited by all of the sewer lines upon which the properties abutted. Of course Appellants presented testimony to the contrary including a real estate appraiser who opined that neither property would be benefited by the sewer line in the private road. It is for the trial court to determine the credibility of all witnesses and to weigh the evidence before it. We conclude that the trial court in this case did not err in its finding that the properties in question were benefited by the sewer lines in all three streets.

In addition to the principal issue discussed above, Appellants also contend in this appeal that the assessment for the sewer line in the private drive is invalid because the Authority's Resolution prescribing the method of which assessments are to be made for properties capable of further subdivision refers to "street sewers." Appellants argue that the private drive in question here is not a street, therefore, the assessment is invalid. Appellants contend that the private drive is an easement, not a street. The trial court dismissed this argument by referring to the Township subdivision ordinance which defines "street" as "a public or private right of way serving as a means of vehicular and pedestrian travel and serving space for utilities." Aside from that definition which may or may not be binding upon the trial court or upon us, we note from the record that the private drive in question is used not only by the Appellants but neighbors as well, even though it is posted as a private drive. The north portion of the road is blacktopped and the south portion has tar and chips on it. The Township property map indicates that it joins Watson Road and Wolf Road. That same property map indicates many other property owners bounded on the north and south by Watson Road and Wolf Road. In addition to the sewer line, a water line, electric line and telephone line are also located in the private drive. Accordingly, we cannot say as a matter of law that the trial court erred when it concluded that the sewer line in the private drive was a "street sewer."

Finally, Riehls contend that their property was incorrectly assessed as though it was subdivided into 4 parcels when, in fact, it is and has been used as a single residential lot for a period in excess of 30 years. Although this issue was raised in the affidavit of defense filed by Riehls, it is not addressed in the opinion

of the trial court. The issue involves an interpretation of the various parts of paragraph 3 of the Resolution. Sub-paragraph (A) deals with circumstances where a tract cannot be further subdivided. Sub-paragraph (B) concerns tracts which can be further subdivided and sub-paragraph (C) simply gives the Authority the power to make other adjustments which may be necessary to affect equitable assessments. Since the Riehl tracts can be further subdivided (each into 2 lots, as we have previously noted), the Authority utilized the provisions of 3(B) which reads as follows:

In instances where a lot or tract land [sic] is capable of further subdivision under applicable Subdivision and Zoning ordinances and Regulations of Millcreek Township, the following rules for foot frontage assessment shall be applied:

(I) Where the assessable property fronts only one street sewer such property shall be assessed on the basis of its footage abutting on said street sewer.

(II) Where the assessable property fronts two or more street sewers, such property shall be assessed on the basis of its total frontage on such street sewers, as determined by whatever frontage is capable of being used under applicable Subdivision and Zoning Ordinances and Regulations for human occupancy, employment, recreation or such other purposes allowable under said applicable zoning ordinances and regulations, subject to proper adjustments, after giving effect to such further adjustment as provided in sub-paragraph A(III), A(IV) and A(V).

The assessments against the Riehl property are 5 in number. Lot 018 which is bounded on the north by Wolf Road, on the east by lands of others, on the

south by Watson Road and on the west by lot 022, also owned by Riehl, is assessed for its entire frontage on Wolf and Watson Roads. Lot 022 which is bounded on the north by Wolf Road, on the east by lot 018, on the south by Watson Road and on the west by the private road is assessed on the basis of 75 feet on Watson Road (actual footage is 200 but an adjustment of 125 feet was made), 801.21 feet on the private road (actual footage 851.21 feet but a 25 foot deduction was made at both ends of the drive for the streets) and 75.39 feet on Wolf Road (actual footage is 200.39 feet with adjustments of 125 feet).

As we understand Riehls' argument, it is that nowhere did they get the benefits of 3(A)(V) which provides that where the assessable property abuts a sewer line in 3 streets, the shortest side should be eliminated from the assessment and the property should then be assessed on the basis of its abutting frontage on the longest side and the abutting frontage in excess of 100 feet on the next longest side. They contend that even though their property is *capable* of further subdivision, the fact is that it has not been so subdivided and therefore, they are entitled to have the assessment based upon a combination of the 2 lots as a single tract and the computation based upon the application of 3(A)(V). The net result, of course, would be to eliminate the entire assessment along Watson Road and reduce the assessment on Wolf Road by one half.

The Authority contends that since both lots are *capable* of subdivision,[3] 3(B)(II) applies. Although they did not use 3(A)(V), the authority said they did make appropriate adjustments under 3(C) in order to

---

[3] There was testimony that nothing in the Township Subdivision Ordinance would preveent the subdivision of the Riehl tract. As we have noted, *supra*, a modification agreement permits the subdivision of each lot into two lots.

make the assessment equitable. We agree with the Authority that 3.(B) is the proper paragraph to be utilized for computation in the instant case because the entire tract *is* capable of subdivision. We do believe, however, that if that subdivision does result in a situation where 3(A)(V) would apply, that subparagraph must be utilized to give full effect to all of the provisions of 3(B). Since only 2 sides of lot 018 were assessed for the reason that it abuts only two sewered streets, 3(A)(V) is not applicable to that lot. Lot 022 has been assessed as abutting on 3 sewered streets and the provisions of 3(A)(V) do not appear to have been applied. As we have noted, lot 022 was assessed on a front foot basis of 951.60 feet after adjustments.[4] If 3(A)(V) is applied, the front foot assessment for lot 022 is exactly the same![5] It follows that although the Authority may have arrived at the Riehl assessment without invoking 3(A)(V), the assessment is, nevertheless, correct.

Order affirmed.

### ORDER

AND Now, this 11th day of February, 1982, the order of the Court of Common Pleas of Erie County dated June 4, 1980 finding the sewer assessments and computations of assessments on the properties of Ralph R. Riehl, Jr. and Susan Riehl, and Norman W. Seip and Margaret D. Seip valid and the judgments entered pursuant to that order, are affirmed.

---

[4]   75     feet on Watson Road
     801.21 feet on private road
      75.39 feet on Wolf Road

     951.60 feet

[5] 851.21 feet on private road
    100.39 feet on Wolf Road (excess over 100 feet)

     951.60 (eliminating 200 feet on Watson Road)

Judge PALLADINO did not participate in the decision in this case.